# CHARLESTON.

## R. I. YOUNG, ADMINISTRATOR, *v.* WHITE SULPHUR AND HUNTERSVILLE RAILROAD COMPANY

### Submitted May 6, 1924.    Decided May 20, 1924.

1. RAILROADS—*Care Required of Automobile Passenger.*

   While the negligence of the driver of an automobile can not be imputed to a mere passenger, the latter must use such care for his own safety as an ordinarily prudent person would exercise under like circumstances. (p. 536).

2. SAME—*Contributory Negligence of Automobile Passenger Question for Jury.*

   Whether a passenger riding in an automobile driven by another exercises such care for his own safety as a reasonably prudent person would take under like circumstances, is generally a question of fact for the jury. (p. 539).

Error to Circuit Court, Greenbrier County.

Action by R. I. Young, administrator, against the White Sulphur & Huntersville Railroad Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*G. Gilmer Easley* and *Chas. S. Dice,* for plaintiff in error.

*George A. Revercomb,* and *O. B. Harvey,* for defendant in error.

MILLER, JUDGE:

Plaintiff brought this suit as administrator of the estate of his deceased wife, Mrs. Bettie E. Young, to recover damages for injuries sustained by her, which resulted in her death. At the close of plaintiff's evidence the defendant moved the court to exclude the evidence and direct a verdict for it, and after verdict moved for judgment non obstante verdicto, which motions were overruled. The verdict for the plaintiff was for $2,500.00. From a judgment entered on the verdict of the jury defendant has appealed.

From the evidence it appears that Mrs. Young was a passenger in the automobile of one Elmer Lynch, who made

regular trips between Neola, the place where the accident occurred, and White Sulphur Springs, carrying the United States mails, as well as passengers for hire. She was in the rear seat holding in her arms a child two years of age; next to her was her daughter, fifteen years of age; and on the extreme left of the seat another young lady. The automobile was moving westward along the street or road which passed, at the crossing, very near to defendant's station house or depot. The train which struck the automobile, composed of an engine and tender, two freight cars, and a passenger coach, was proceeding northward, passing close to the west side of the depot, the engine at the front of the train, but running backwards. The engineer was on the opposite side of the engine from the approaching automobile, and says he was looking forward along the track, but did not see the automobile until he heard a noise, which he thought was caused by the tender jumping the track, when he applied the brakes and stopped the train about 67 feet from the crossing. The fireman on the engine, at the time of the accident, was looking backwards to see if the conductor was going to give a signal to stop at the station. The train was moving about seven or eight miles an hour.

There is no doubt that the defendant was negligent. All the evidence, including the testimony of the engineer, is that no whistle was blown or bell rung at the crossing, and it appears that there was no signboard as required by the statute.

It is admitted that the negligence of the driver of the automobile, if he was negligent, can not be imputed to plaintiff's intestate. The main ground relied on by defendant for reversal of the judgment below is that Mrs. Young was, as a matter of law, guilty of contributory negligence in failing to observe the approach of the train and to warn the driver of the danger.

It is undoubtedly the law that a passenger riding in an automobile with another must exercise reasonable or ordinary care to avoid injury, such care as an ordinarily prudent person would exercise under like circumstances. Sherman and Redfield on Negligence, (6th ed.), § 66a, note; Huddy on Automobiles, (6th ed.), § 688, and cases cited; *Brubaker* v.

*Iowa City*, (Wis.), 18 A. L. R., note p. 309, and the numerous cases there cited and reviewed.

Can it be said in this case as a matter of law that Mrs. Young did not exercise ordinary care  At the time of the accident the automobile was proceeding slowly, in second gear.  Occupying alone the front seat of the car, the driver was in a much better position to see the danger than was Mrs. Young, who was in the rear seat with two other adult passengers and a small child, the latter in her arms.  Though she might have seen the train before the automobile reached the point where a view of the railroad was cut off by the station house, there was yet sixty feet between that point and the crossing.  Lynch had been carrying the mail on this route for three years.  Whether this fact was known to Mrs. Young does not appear, but the fact that he was carrying the mail between the two towns would be notice to her that he was familiar with the road over which they were to travel. We can not say that a passenger would be charged with the duty of warning the driver that he was approaching a railroad crossing, or that a train was coming on the track, until it was seen that he either was unaware of the presence of the train, or seeing it, took no notice thereof or proceeded carelessly, indifferently or recklessly into danger.  While a passenger can not passively sit still and close his eyes to obvious dangers, in the absence of unusual circumstances; he is under no duty to direct the conduct of the driver, when he has no control over the latter.  Plaintiff's intestate in this case could not anticipate that the driver would carelessly or recklessly enter upon the railroad crossing immediately in front of the passing train, when he was moving at a rate of speed that would have enabled him to stop within a few feet; and when the imminent danger became apparent, which must have been seen by the driver before Mrs. Young could discover it, there was only time for the driver to act.  In *Hermann* v. *Rhode Island Co.*, 36 R. I. 447, it is said: "It can not be said as a matter of law that such guest or passenger is guilty of negligence because he has done nothing.  In many such cases the highest degree of caution may consist of inaction. In situations of great or sudden peril, meddlesome interference with those having control, either by physical act or

by disturbing suggestions and needless warnings, may be exceedingly disastrous in its results." See also, to the same effect, *White* v. *Portland Gas & Coke Co.*, 82 Ore. 643, where was also said that "the court can not lay down a mathematical precept as a law enjoining in detail what should be said or done or omitted in every juncture of danger. It is plain, however, that an invited guest is not to be supine and inert as mere freight. Accepting the hospitality of his friend does not excuse him from the duty of acting for his own safety as a reasonably prudent person would under like conditions. Whether he does so or not must be decided by the 12 who declare the facts embodied in the verdict." In *Carnegie* v. *Great Northern Ry. Co.*, 128 Minn. 14, the court said that a passenger "is obliged to exercise such care as a reasonably prudent person would, when riding with another under similar circumstances. * * * His failure to look is evidence to be considered on the question of his negligence, but it is not conclusive against him." In *Cowan* v. *Salt Lake & U. R. R. Co.*, (Utah), 189 Pac. 599, it was held that a passenger holding another in her lap is held to a less degree of vigilance in looking and listening for danger and is not guilty of negligence as a matter of law though she did not hear or see an approaching car as she might have done if she had looked and listened. And it has been held in determining whether the failure of the passenger to look and listen at a railroad crossing is contributory negligence as a matter of law, the existing circumstances are to be considered, including the age and sex of the passenger. *Noakes* v. *N. Y. Cent., Etc. Ry. Co.*, 121 App. Div. (N. Y.) 716.

The duty of the passenger being less than that of the driver of an automobile and depending on so many circumstances, the question of his contributory negligence is almost always one for the jury. Babbitt on Automobiles, (3rd. ed.), §1656; *Drouillard* v. *Sou. Pac. Ry. Co.*, (Cal.), 172 Pac. 405; *Carnegie* v. *Gt. North. Ry. Co.*, *supra; Baker* v. *Fields*, (Tex.) 236 S. W. 170; *Black* v. *Chicago, Gt. West. Ry. Co.*, (Iowa,) 174 N. W. 774; *Howe* v. *Railway Co.*, 62 Minn. 71, 30 L. R. A. 684; 18 A. L. R., note pp. 322-334.

The jury were taken to the scene of the accident, at the

instance of defendant, and all the places and objects mentioned in the evidence were pointed out to them. A train similar to the one which caused the accident was started at a point 527 feet from the crossing and run at the same rate of speed as on the former occasion to the crossing, where the brakes were applied and the train stopped as before.

Under the· facts and circumstances in evidence, in view of the authorities examined and cited, we can not say that plaintiff's intestate failed to act as a reasonably prudent person would under like circumstances, and that she can be held guilty of negligence as a matter of law.

Error is assigned in the giving and refusing of instructions to the jury. It is insisted the plaintiff's instruction No. 3 was erroneous, which told the jury that if they believed that Mrs. Young and the other passengers in the automobile, told the driver that the train was approaching and did what a reasonably prudent person would have done under the circumstances, and the driver continued on disregarding the warning given him, then Mrs. Young was not guilty of contributory negligence, and not responsible for what Lynch did: because, first, there was no evidence that Mrs. Young warned the driver; and, second, the fact that the other passengers warned him would not relieve her. The conductor on the train testified that Hazel Young said to him immediately after the accident: "It was all Mr. Lynch's fault; they told him, there comes the train, and he didn't pay any attention." ·This witness says that Lynch afterwards told him he heard the girls say, "There comes the choo-choo", or "There comes the train", but that he thought it had gone to North Fork. The superintendent of the railroad testified that Hazel Young said to him at the hospital where she was taken, a short time after the accident: "We told Lynch that the train was coming, but he didn't stop." Lynch admits that he heard one of the girls say something about the "choo-choo", but thought she was talking to the baby, and didn't know what was meant by a "choo-choo". If, in fact, any of the passengers warned the driver of the proximity of the train, we think this would to some extent relieve Mrs. Young of the duty of repeating the warning, if she heard it,

under the rule that she must act as a reasonably prudent person would under like circumstances.

But the case was tried solely on the theory of contributory negligence; and the jury were fully instructed on that point. They were told that Mrs. Young could not rely on the driver of the automobile, but that she had to look and listen for the approach of the engine, and if the approach of the engine could, by looking and listening, have been observed by her, or was so observed and she failed to warn the driver, and if unheeded, she failed to remonstrate with him, then she was guilty of contributory negligence, and the administrator could not recover; and they were further instructed that if they believed from the evidence that the deceased omitted to use her senses as an ordinarily cautious person would have done under all the circumstances, and so failed to discover the approach of the train, or if she was aware that the train was approaching and failed to warn the driver of the apparent danger, she was in either case guilty of culpable negligence barring recovery. These instructions tend to present defendant's case in stronger terms than the law of the case warranted.

The judgment will be affirmed.

*Affirmed.*